**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GERALD E. SAMUELS,
        *Plaintiff-Appellant,*

    v.

HOLLAND AMERICAN LINE–USA
INC; HAL NEDERLAND NV CORP;
HOLLAND AMERICAN LINE NV;
HOLLAND AMERICA LINE INC,
        *Defendants-Appellees.*

No. 10-35933

D.C. No.
2:09-cv-01645-RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, Chief District Judge, Presiding

Argued and Submitted
July 15, 2011—Seattle, Washington

Filed September 2, 2011

Before: Ronald Lee Gilman,* Richard R. Clifton, and
N.R. Smith, Circuit Judges.

Opinion by Judge Gilman

---

*The Honorable Ronald Lee Gilman, Senior Circuit Judge for the Sixth
Circuit, sitting by designation.

16819

**COUNSEL**

Thomas A. Geisness, The Geisness Law Firm, P.S., Seattle, Washington, Robert A. Clough, The Geisness Law Firm, P.S., Seattle, Washington, (on briefs) for the plaintiff-appellant.

Louis A. Shields, Nielsen Shields, PLLC, Seattle, Washington, for the defendant-appellee.

**OPINION**

GILMAN, Senior Circuit Judge:

Gerald E. Samuels and his children were passengers on a seven-day cruise with the Holland American Line. During the time that the cruise ship was anchored in Cabo San Lucas on Mexico's Baja Peninsula, the Samuels family visited the nearby Lover's Beach on their own. Samuels was seriously injured by turbulent wave action while in the Pacific Ocean at that location. He sued Holland American, alleging that the cruise line breached its duty to warn him of the dangers associated with swimming there.

The district court granted summary judgment in favor of Holland American, holding that the cruise line did not have a duty to warn Samuels because the conditions of the ocean at Lover's Beach were open and obvious and because there was no evidence of particularly hazardous conditions or of prior accidents at that location. Samuels now appeals from that decision. For the reasons set forth below, we affirm the judgment of the district court.

## I.   BACKGROUND

On November 22, 2008, Samuels and his two teenaged children embarked on a seven-day cruise aboard a Holland American vessel. The ship arrived in Cabo San Lucas, Mexico, its first stop, on the morning of November 24, 2008, with a scheduled departure time of 5:00 p.m.

Because he had never been to Cabo San Lucas before, Samuels made several inquiries of unidentified Holland American staff members regarding possible shore activities. Samuels asserts that the staff assured him that he could visit Cabo San Lucas and take a skiff to Lover's Beach before returning to the ship in time for the scheduled departure at 5:00 p.m.

When Samuels and his two children arrived at the pier in Cabo San Lucas, they were met by several skiff-boat operators. Samuels made arrangements with one of the operators to drop the three of them off at Lover's Beach on the Sea of Cortez side. Because Lover's Beach is situated at the very tip of the Baja peninsula, visitors have access to both the Sea of Cortez and the Pacific Ocean. Lover's Beach is a public beach where no lifeguards are on duty and no warning signs are posted regarding possible dangers in the area.

Samuels waded in the Sea of Cortez for about five minutes. He then walked over to the Pacific Ocean side of Lover's Beach where he noticed about 20 people swimming in the ocean. After observing that the waves did not seem particularly rough, he entered the ocean for a few minutes before returning to the beach. Shortly thereafter, Samuels reentered the ocean in the same place and again waded in chest-deep water. The next thing he remembers is feeling a "tremendous pull up and back and then being upside down." Samuels hit his head on the ocean floor as he somersaulted, causing severe neurological damage. He was carried to shore by bystanders because the tumble had caused him to lose function in his

limbs. Samuels was later diagnosed with central-chord syndrome and is now classified as a high-functioning quadriplegic with significant pain and mobility limitations.

Prior to Samuels's injuries, Holland American had been sailing to Cabo San Lucas for 27 years. Approximately 96,000 Holland American passengers sailed on ships anchoring in Cabo San Lucas in 2008 alone. Based on the sworn declaration of the director of Holland American's Risk Management Department, the cruise line's claims database shows no claims or complaints associated with the Pacific Ocean side of Lover's Beach. In addition, the director of Holland American's Fleet Security stated in his sworn declaration that he was "not aware of any warnings provided by sister cruise ship companies or Mexican authorities regarding unusual risks associated with swimming" at Lover's Beach on the Pacific Ocean side. He also stated that Holland American has "no control over the independent tour operators or water taxis who promote their tours or services on the Cabo San Lucas public pier and marina." Holland American itself does not own any property at Lover's Beach.

As a result of his injuries, Samuels sued Holland American for negligence, alleging that the cruise ship's staff should have warned him of the dangers of swimming on the Pacific Ocean side of Lover's Beach and that, had he received such warnings, he would not have entered the ocean. Holland American moved for summary judgment. In opposition to Holland American's motion, Samuels submitted the declarations of two proffered experts, Dwight Hutchinson and Karin Larson. Hutchinson worked in the cruise-line industry from 1987 until 2000, and between 1994 and 2000 he was the Guest Programs Manager for Cruise West, a small-ship cruise operator. He had never been to Lover's Beach, and the last time he dealt with shore excursions in Cabo San Lucas was in 2000. In preparation for his deposition, Hutchinson searched the internet for information regarding Lover's Beach for about an hour and spoke to a few former colleagues who

have worked in the cruise-line industry. He did not contact any cruise lines comparable to Holland American for information. Hutchinson also conceded at his deposition that he had not done any research into the standard of care for the operation of shore-side activities by a cruise line since 2000.

In his sworn declaration, Hutchinson stated that "[i]t has been common knowledge in the cruise industry for years that entering the water on the Pacific Ocean side of Lover's Beach is extremely dangerous and should not be attempted." But at his deposition, Hutchinson was unable to point to any materials from the cruise-line industry that supported this statement. He also stated that he was unaware of any injuries, other than Samuels's, that have occurred on the Pacific Ocean side of Lover's Beach.

Larson was the other person that Samuels proffered as an expert witness. She has worked in the travel industry since 1972, most recently for a company that offers custom travel planning. Larson has traveled to Cabo San Lucas and has personally visited Lover's Beach. In her sworn declaration, Larson stated as follows:

> I have been aware, since I first traveled to Cabo San Lucas in 1976, that entering the water in any way on the Pacific Ocean side of Lover's Beach is extremely dangerous. The danger is due to the confluence of waters of the Pacific Ocean and the Sea of Cortez which creates hazardous current conditions, undertows[,] and varying wave action which are not readily apparent. The danger presented and the cause of the danger has been well known throughout the travel industry for years.

> Because of the danger of entering the water on the Pacific side of Lover's Beach, it was always my practice and policy to advise any of our clients that we directed to Lover's Beach to avoid entering the

water on the Pacific Side and to only enter the water
on the Sea of Cortez side. I understand this to be an
industry wide practice.

Larson did not provide any information in her declaration
regarding where she had acquired this information or how she
derived her conclusions. Nor did Samuels present any evi-
dence in his opposition to Holland American's motion for
summary judgment that contradicts the sworn declarations
made by the Holland American officials that the cruise line
had never received any claims or complaints regarding the
Pacific Ocean side of Lover's Beach prior to Samuels's inju-
ries.

The district court granted summary judgment in favor of
Holland American. In doing so, it struck the material portions
of Hutchinson's and Larson's declarations. It reasoned that
Hutchinson was not qualified to testify as an expert given his
lack of personal knowledge with regard to Lover's Beach, his
lack of training in beach safety, his failure to establish that he
has the requisite knowledge of the cruise-line industry's stan-
dard of care for warning passengers, and the fact that he had
not dealt with Cabo San Lucas shore excursions in more than
ten years. The material portions of Larson's declaration were
similarly stricken "because she [did] not establish[ ] that she
is qualified to testify as an expert on the safety or the standard
of care for cruise lines."

Having stricken these declarations, the district court held
that no genuine issue of material fact existed regarding
whether Holland American had a duty to warn Samuels about
the Pacific Ocean side of Lover's Beach. The court concluded
that the ocean conditions at Lover's Beach were open and
obvious, and because "there [was] no evidence of particularly
hazardous conditions or of prior accidents at Lover's Beach,"
Holland American did not have a duty to warn Samuels about
swimming there.

On appeal, Samuels raises the following three arguments: (1) that the district court abused its discretion in excluding the testimony of Hutchinson and Larson, (2) that "the district court erred in concluding that there was no evidence of the existence of hazardous conditions at Lover's Beach," and (3) that "the district court erred in concluding that the hazardous conditions at Lover's Beach were open and obvious as a matter of law."

## II.  ANALYSIS

### A.  Standard of review

We review the district court's grant of summary judgment de novo. *Chale v. Allstate Life Ins. Co.*, 353 F.3d 742, 745 (9th Cir. 2003). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, we must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

We review a district court's decision to exclude expert testimony under the abuse-of-discretion standard. *United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997) (en banc). "A district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts." *Id.* Under this deferential standard of review, a "trial court has broad discretion in assessing the relevance and reliability of expert testimony." *United States v. W.R. Grace*, 504 F.3d 745, 759 (9th Cir. 2007) (internal quotation marks omitted).

## B.  Exclusion of expert testimony

**[1]** Rule 702 of the Federal Rules of Evidence provides that expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." A witness who is qualified to testify as an expert through

> knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

**[2]** The district court's gatekeeper role "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). This "duty to act as gatekeeper and to assure the reliability of proffered expert testimony before admitting it applies to all (not just scientific) expert testimony." *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). And "the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. The *Daubert* factors that a district court chooses to consider will depend "on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co.*, 526 U.S. at 150 (internal quotation marks omitted).

**[3]** In the case before us, the district court excluded the sworn declarations proffered by Samuels's expert witnesses to the effect that entering the water on the Pacific Ocean side of

Lover's Beach is extremely dangerous and that this danger is commonly known throughout the cruise-line industry. As for Hutchinson, he was unable to provide any materials from the cruise-line industry to support his statement that it is common knowledge that the Pacific Ocean side of Lover's Beach is extremely dangerous. Nor did Hutchinson contact any other comparable cruise lines to inquire whether they warn passengers about Lover's Beach when they anchor in Cabo San Lucas. Finally, he had not done any research into the standard of care for shore-side activities since he left Cruise West in 2000. Given these facts, and the fact that Hutchinson's research included little more than a quick internet search regarding Lover's Beach and a few telephone calls, we conclude that the district court did not abuse its discretion in striking the material portions of Hutchinson's declaration.

**[4]** We also conclude that the district court did not abuse its discretion by excluding the material portions of Larson's declaration. Her declaration established that she has worked in the travel industry for over 30 years, but never for a cruise line. More importantly, she failed to specify in her declaration what information she relied on in reaching her conclusions. Given the paucity of information relating to Larson's qualifications as an expert on the possible dangers that exist on the Pacific Ocean side of Lover's Beach, and the absence of any support for her opinions, the district court did not abuse its discretion in striking the material portions of her declaration.

## C.  Duty-to-warn claim

**[5]** "To recover for negligence, a plaintiff must establish: (1) duty; (2) breach; (3) causation; and (4) damages." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1070 (9th Cir. 2001). "[T]he owner of a ship in navigable waters owes to all who are on board . . . the duty of exercising reasonable care under the circumstances of each case." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959); *Peters v. Titan Navigation Co.*, 857 F.2d 1342, 1344 (9th Cir. 1988)

(concluding in a maritime-tort action for negligence that, because the plaintiff was not a seaman, the duty owed to him was the "ordinary negligence duty of reasonable care under the circumstances").

**[6]** The degree of care considered reasonable in a particular circumstance depends upon the "extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger." *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 172 (2d Cir. 1983) (affirming the district court's dismissal of the complaint where the alleged dangerous condition—the stool over which the injured passenger tripped while dancing on the ship's dance floor—was "in no way peculiar to maritime travel" and where the cruise line had no actual or constructive notice that the stool in question was dangerous). Where the condition constituting the basis of the plaintiff's claim is not unique to the maritime context, a carrier must have "actual or constructive notice of the risk-creating condition" before it can be held liable. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (establishing this requirement in a slip-and-fall case aboard a cruise ship); *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237-38 (S.D. Fla. 2006) (applying this standard for injuries that a passenger sustained while participating in an optional excursion in a rainforest).

**[7]** Construing the facts here in the light most favorable to Samuels, there is no genuine dispute of material fact that would require that this case be submitted to a jury. Samuels's wading on the Pacific Ocean side of Lover's Beach was not uniquely associated with maritime travel. And the record does not include any evidence (particularly because the material portions of the declarations made by Samuels's experts were properly stricken) that Holland American knew or should have known that the Pacific Ocean side of Lover's Beach was so dangerous that it needed to warn passengers not to swim there. With the exception of Samuels, 96,000 Holland Ameri-

can passengers visited Cabo San Lucas in 2008 without a single report that any of those passengers who chose to visit Lover's Beach were injured while doing so.

Nor was Holland American aware of any similar accident, or any accident at all, that had previously occurred while a Holland American passenger was swimming on the Pacific Ocean side of Lover's Beach. *See Isbell*, 462 F. Supp. 2d at 1237-38 (concluding that Carnival Cruise Line did not have constructive notice of the possible danger of a passenger being bitten by a snake during an off-the-ship excursion in a rain forest where Carnival had no report of this ever happening before to one of its passengers). Samuels has failed to provide any evidence to the contrary.

**[8]** Because Holland American had neither actual nor constructive notice of a dangerous condition on the Pacific Ocean side of Lover's Beach, it had no duty to warn Samuels about swimming there. For this reason, we have no need to address whether the possible dangers of swimming at that location were open and obvious, or whether that question is an appropriate one for decision on summary judgment. We conclude, in sum, that the district court properly granted summary judgment in favor Holland American.

## III.   CONCLUSION

For all the reasons set forth above, we affirm the judgment of the district court.