Gerald COHEN, Plaintiff,

v.

CARNIVAL CORPORATION d/b/a Carnival Cruise Lines, Defendant.

No. 12–21374–CIV.

United States District Court, S.D. Florida.

April 12, 2013.

Leonard P. Haberman, Haberman Law, P.A., Boca Raton, FL, for Plaintiff.

Jeffrey Eric Foreman, Noah Daniel Silverman, Foreman Friedman, PA, Miami, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (D.E. 42)

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment (D.E. 42), filed on January 17, 2013. Plaintiff filed his Response (D.E. 50) on February 1, 2013, to which Defendant filed its Reply (D.E. 51) on February 11, 2013. Upon review of the Motion, the Response, the Reply, and the record, the Court finds as follows.

## I. Background

This case involves injuries allegedly suffered by Plaintiff Gerald Cohen ("Cohen") while on board the *Carnival Freedom* cruise ship, which is owned by Defendant Carnival Corporation ("Carnival"). Cohen alleges that on April 14, 2011, he tripped and fell down the stairs at the end of a gangplank leading off the ship at the Panama port of call. (Compl., D.E. 1, ¶¶ 6, 9, 11.) Specifically, Cohen alleges that "he was disembarking with his wife and stopped for a photograph on the gangplank. He was stopped by Carnival's representatives. After stopping for the photo, he took one to two steps and suddenly fell down the stairway leading to the pier." (*Id.* ¶ 11.) Cohen further asserts that as a result of the fall, he suffered a left patella fracture which required surgery. (*Id.*)

On April 11, 2012, Plaintiff filed his Complaint in this Court, alleging one count of negligence against Defendant.[1][2] Plaintiff alleges that Defendant owed a duty of reasonable care to Plaintiff to provide a means of safe ingress and egress from the *Carnival Freedom,* and that Defendant breached this duty of care "by committing one or more of the following acts or omissions:

A. Failing to provide a safe ramp/stairway for use by passengers such as Plaintiff;

B. Failing to adequately equip the vessel and specifically the subject stairway with visible warning signs or employees to warn guests of the impending stairs;

C. Failing to adopt policies and procedures for the orderly and safe inspection and for the assessment of known or foreseeable risks on the vessel and its stairways;

D. Failing to establish and implement safeguards regarding adequate and safe stairways, and step surfaces in public areas including the subject stairway on which Plaintiff fell;

E. Failing to inform and warn Plaintiff of these dangerous and unsafe conditions, which Defendant knew or in the exercise of reasonable care under the circumstances, should have known;

F. Failing to comply with Defendant's own internal policies and procedures established by the ISM Code, SMS, SQM, and other internal operating procedures required by the ISM Code, SOLAS, all applicable health, building, and safety codes and national standards in accordance with 33 C.F.R. § 96.100 et seq., 46 U.S.C. Section 3201 et seq., and all Rules and Regulations, including, but not limited to all relevant National Fire Safety Protection Codes, and NVIC's of the United States Coast Guard;

G. Failing to instruct its employees to properly warn passengers of the impending staircase;

H. Failing to use a ramp rather than a set of steps;

I. Failing to take photographs of passengers on the pier or other surface outside of the ship as opposed to on a gangplank full of passengers.

(*Id.* ¶¶ 10, 12.) Plaintiff also alleges that the "direct and proximate cause of the fall

---

1. This negligence case is within the admiralty jurisdiction of the Court. 28 U.S.C. § 1333; *Crist v. Carnival Corp.,* 410 Fed.Appx. 197, 201 (11th Cir.2010) (citing *Anderson v. United States,* 317 F.3d 1235, 1237 (11th Cir.2003)).

2. The Complaint also alleged a loss of consortium claim by former Plaintiff Ronni Cohen. (*See* Compl. ¶¶ 15, 16.) On June 21, 2012, the Court dismissed the loss of consortium claim with prejudice. (*See* Order, D.E. 17.)

was the presence of the stairway upon which Plaintiff fell [and] the lack of adequate and/or visible signage warning that there were stairs at the end of the gangplank." (*Id.* ¶ 11.)

In its Motion, Defendant argues that it is entitled to summary judgment in its favor on Plaintiff's negligence claim for the following four reasons: (1) "there is no evidence in the record that Carnival was on notice of the condition Plaintiff claims caused his alleged accident," (2) "the condition Plaintiff alleges caused his accident was open and obvious," (3) "Plaintiff has failed to establish evidence regarding industry standards or Carnival's safety, inspection, or training procedures," and (4) "Plaintiff has failed to establish evidence of medical causation." (Motion 2.)

## II. Standard of Review

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof con-

cerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation omitted). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548; *see also* FED.R.CIV.P. 56(c). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." *Id.* at

587, 106 S.Ct. 1348. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.*

## III. Discussion

■■■ "A carrier by sea does not serve as an insurer to its passengers; it is liable only for its negligence." *Weiner v. Carnival Cruise Lines,* No. 11–cv–22516, 2012 WL 5199604, at *2 (S.D.Fla. Oct. 22, 2012) (citing *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1334 (11th Cir.1984); *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1322 (11th Cir.1989)). "To satisfy the burden of proof in a negligence action, plaintiff must show: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that this breach was the proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages." *Isbell v. Carnival Corp.,* 462 F.Supp.2d 1232, 1236 (S.D.Fla.2006) (citing *Hasenfus v. Secord,* 962 F.2d 1556, 1559–60 (11th Cir.1992); *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 999 (11th Cir.1992)).

### A. No Actual or Constructive Notice of a Risk-creating Condition

■■■ Defendant's liability in this case turns on whether Defendant had notice, either actual or constructive, of an alleged risk-creating condition. The applicable standard of care is "ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe,* 867 F.2d at 1322. "Constructive notice 'requires that a defective condition exist for a sufficient interval of time to invite corrective measures.'" *Mirza v. Holland America Line Inc.,* No. C11–1971, 2012 WL 5449682, at *3 (W.D.Wash. Nov. 6, 2012) (quoting *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63, 65 (2d Cir.1988)).

■■■ Cohen has presented no evidence that Carnival had actual or constructive notice of the alleged risk-creating condition posed by the steps at the end of the gangplank. Specifically, there is no evidence in the record that Carnival knew or should have known that the gangplank, steps at the end of the gangplank, and/or the disembarkation process posed any risk-creating condition for any passenger. There is no evidence in the record of any accident reports, passenger comment reviews or forms, or reports from safety inspections alerting Carnival of any potential safety concern at the steps at the end of their gangplanks. *See Smolnikar v. Royal Caribbean Cruises, Ltd.,* 787 F.Supp.2d 1308, 1323–24 (S.D.Fla.2011) (finding that the cruise line had no actual or constructive notice of any risk-creating condition from a zipline tour operator because "Royal Caribbean had positive information about [the tour operator], and there is no evidence that Royal Caribbean received any form of notice regarding the existence of an alleged danger, as there were no accident reports from [the tour operator], or passenger comment forms or reviews, alerting Royal Caribbean as to a potential safety concern at traverse # 6 of the tour"); *see also Samuels v. Holland American Line–USA Inc.,* 656 F.3d 948, 953–54 (9th Cir.2011) (finding that the cruise line did not have actual or constructive notice of any danger to passengers to wading on a beach because there was no evidence in the record that any other passenger had ever been injured on that beach and the cruise line was not "aware of any similar accident, or any accident at all, that had previously occurred while a Holland American passenger was swim-

ming on the Pacific Ocean side of Lover's Beach").

Cohen summarily argues that "[t]he poorly laid warning sign, the cone at the bottom of the staircase, and the photographer's placement of the patron establishes actual notice." [3] (Response 3.) However, there is no evidence in the record that there was a "warning sign" or a "cone at the bottom of the staircase" before or at the time of Cohen's fall. (*See* Response 3.) During his deposition, Cohen stated that he did not remember seeing any warning sign or cone before or after his accident. (*See* Cohen Dep. 31, 43, 46.) With regard to the presence of a warning sign, Cohen testified as follows:

Q. Did they have any signage on the steps?

A. At the time I didn't see anything.

Q. After your accident, did you see any signage on the steps?

A. No. I was laying on the ground.

. . .

Q. In the photograph, although it's not very clear, there is some yellow strips. One at the end of the grayish ramp and then one at the second step. Do you see that?

A. Yes.

Q. The yellow strips. Do you have a recollection of seeing either of those yellow strips at any time before your accident happened?

A. No.

(*Id.* at 31, 43.) With regard to the cone, during his deposition, Cohen was shown a photograph showing "a yellow caution cone to the side of the gangway that [he] came down." (*See id.* at 46.) However, Cohen could not remember whether there were any yellow caution cones in the area where he fell, and Cohen stated that he did not see any yellow caution cones before his accident. [4] (*See id.*) Furthermore, there is no evidence in the record as to when the photographs of the "yellow strips" or the "yellow caution cone" were taken. (*See* Response Ex. A (undated picture of steps with yellow strips of tape).) [5] If the photographs were taken after Cohen's accident, the yellow strips and/or the cone at the bottom of the steps could be evidence of subsequent remedial measures taken by Carnival, which would be inadmissible to prove Carnival's negligence or the need for a warning under Rule 407 of the Federal Rules of Evidence. *See Hughes v. Stryker Corp.*, 423 Fed.Appx. 878, 880–81 (11th Cir.2011) (finding that the district court properly refused to consider a party's arguments related to a recall letter on a motion for summary judgment because the "recall letter was inadmissible as evidence of subsequent remedial measures used to show product defect" under Rule 407). Finally, during her deposition, Cohen's wife did not testify about the presence or absence of any warning signs, yellow strips, or cones. (*See generally*

---

**3.** Plaintiff states that he "does not allege a defect in the stair itself ( [e.g.,] improperly built, wet, etc.). There was not a defect in the staircase itself to put Carnival on notice." (Response 3.)

**4.** Cohen testified as follows:
Q. In the photograph there is a yellow caution cone to the side of the gangway that you came down. Do you have a recollection as to whether or not there were any yellow caution cones anywhere in the area?

A. I don't remember.
Q. Did you see any yellow caution cones before your accident happened?
Mr. Haberman: She wants to know if you saw any.
The Witness: I don't think so, no.
(Gerald Cohen Dep. 46.)

**5.** This photograph shown to Cohen during his deposition has not been presented to the Court as part of the record in this case.

Ronni Cohen Dep.) Accordingly, because there is no evidence in the record that there was any warning sign or a cone at the bottom of the staircase before or at the time of Cohen's fall, these alleged warning signs cannot establish that Carnival had actual notice that the steps, gangplank, and/or disembarkment procedure constituted a risk-creating or dangerous condition.

In addition, the photographer's mere placement of Cohen and his wife at the end of the gangplank for a photograph does not establish that Carnival had actual notice of a risk-creating or dangerous condition created by the steps, gangplank, and/or disembarkment procedure. There is no evidence in the record that Carnival had notice that placing passengers in that position for a photograph presented any danger to passengers. For example, there is no evidence in the record of accidents occurring after a photographer took other passengers' pictures in a similar location. *See Smolnikar,* 787 F.Supp.2d at 1323–24; *Samuels,* 656 F.3d at 953–54. As another example, there is no deposition testimony from the photographer or any other Carnival employee in the record demonstrating knowledge (or lack thereof) of any similar incidents. Cohen simply implies that the photographer's actions shows that Carnival had notice of a risk-creating condition; however, mere implication of actual or constructive notice is insufficient to survive summary judgment. *See Adams v. Carnival Corp.,* No. 08–22465–CIV, 2009 WL 4907547, at *5 (S.D.Fla. Sept. 29, 2009) (finding that in order to survive summary judgment, "mere implication of notice" was insufficient and that the plaintiff needed to show "specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for corrective action").

Cohen also appears to rely on his own deposition testimony that he did not see the steps before he fell. (*See* Gerald Cohen Dep. 30, 31, 36–37.) However, his own statements are insufficient to establish that Carnival was on notice of a risk-creating or dangerous condition. *See Mendel v. Royal Caribbean Cruises, Ltd.,* No. 10–23398–CIV, 2012 WL 2367853, at *3 (S.D.Fla. June 21, 2012) (finding that the plaintiff's reliance on "statements made by unidentified witnesses she met on the cruise ship" who stated that the swimming pool steps were "very slippery" "are not enough to establish that Defendant was on notice of a dangerous condition"). Furthermore, the fact that Cohen himself had an accident on the steps is insufficient to establish that Carnival was on notice of a risk-creating or dangerous condition. *See Adams,* 2009 WL 4907547, at *5 (stating that "the mere fact that an accident occurred ... does not obviate the need to show that Carnival had notice" of the condition).

Accordingly, because the Court finds that there is no evidence that Carnival had any actual or constructive notice of any risk-creating condition related to the steps, gangplank, and/or disembarkment procedure, Carnival is entitled to summary judgment on this theory of liability.

**B. No Duty to Warn**

■ A cruise line's "duty to warn extends to known dangers which are not apparent and obvious," and there is "no duty to warn of dangers that [are] of an obvious and apparent nature." *Young v. Carnival Corp.,* No. 09–21949–CIV, 2011 WL 465366, at *3 (S.D.Fla. Feb. 4, 2011) (citing *Isbell,* 462 F.Supp.2d at 1238; *Luby v. Carnival Cruise Lines, Inc.,* 633 F.Supp. 40, 41 (S.D.Fla.1986)); *see also Weiner,* 2012 WL 5199604, at *3 (stating that "[a] cruise line must warn passengers

only of those dangers that 'the cruise line knows or reasonably should have known,' and 'which are not apparent and obvious to the passenger'" (quoting *Smolnikar*, 787 F.Supp.2d at 1315)). In this case, any danger posed by descending the stairs at the end of the gangplank was open and obvious to Cohen. During their depositions, Cohen and his wife both stated that they had taken multiple cruises prior to their trip with Carnival and were therefore aware of and familiar with cruise ships and the disembarkation process using gangways at the time they went on the Carnival cruise in April 2011. (Gerald Cohen Dep. 14–15; Ronni Cohen Dep. 21, 26–27.) Cohen's wife also stated that the couple had previously exited that same ship down the gangplank without incident at an earlier excursion in Mexico. (Ronni Cohen Dep. 70–71, 73–74.) As an individual with multiple experiences on cruise ships, Cohen was or should have been familiar with the procedure for exiting a ship for an excursion. *See Luby*, 633 F.Supp. at 42 (finding that Carnival had no duty to warn the plaintiff of a ledge on a shower stall in part because the plaintiff had been a passenger on the cruise ship before and would or should have been familiar with the fact that the showers in cruise ships are equipped with ledges); *Young*, 2011 WL 465366, at *4 (concluding that Carnival did not have a duty to warn the plaintiff of uneven terrain on a hike because "as an experienced hiker, Plaintiff understood he would be traversing uneven, rugged terrain and that tripping is a risk posed by the activity"). Moreover, Cohen's wife had exited the subject gangplank using the same steps just moments before Cohen without incident. (*See* Gerald Cohen Dep. 30; Ronni Cohen Dep. 86–87, 101.) Cohen's wife stated that she "clearly saw [the steps]" because "[t]here was nobody in front of me." (Ronni Cohen Dep. 101.) Cohen stated that he could not see the steps because his wife was in front of him, but he also stated that she was one to two feet ahead of him. (Gerald Cohen Dep. 29–30.) Cohen's wife admitted that she had cleared the steps and was standing on the pier beyond the steps before Cohen fell, that she was far enough ahead of Cohen so that he did not fall on top of her, and that there was "nothing between me and my husband." (Ronni Cohen Dep. 92, 94–95, 99.) Therefore, the Court finds that the presence of the alleged danger—the steps at the end of the gangplank—was, or should have been, obvious to Plaintiff by the ordinary use of his senses. *See Mendel*, 2012 WL 2367853, at *5 (finding no duty to warn passengers about steps used to enter and exit a swimming pool because "the steps used to exit the pool were obvious"); *Luby*, 633 F.Supp. at 40 (finding no duty to warn passenger about "the presence of the ledge behind the shower curtain [because it] was, or should have been, obvious to [the plaintiff] by the ordinary use of her senses"); *see also Sachs v. TWA Getaway Vacations, Inc.*, 125 F.Supp.2d 1368, 1374 (S.D.Fla.2000) (finding no duty to warn about "conditions that are obvious and readily observable by a traveler, such as the potential danger of descending the steps of a motorcoach"). Because the steps at the end of the gangplank were open and obvious to a reasonable person through the ordinary use of his senses, Carnival had no duty to warn Cohen of the presence of the steps and Carnival is entitled to summary judgment on this theory of liability.

## C. Remaining Theories of Liability

In its Motion, Carnival moved for summary judgment on Plaintiff's claim that Defendant was negligent in failing to follow its own internal policies and procedures, as well as various industry standards and regulations. (Motion 12–13.)

In his Response, Plaintiff concedes that there is no evidence of any breached safety codes or standards. (Response 16.) Accordingly, Defendant is entitled to summary judgment with respect to any claim based on a breach of safety codes, standards, or regulations.

Carnival also moved for summary judgment on Plaintiff's claims that Defendant was negligent for failing to assess or inspect the gangplank and stairway and for failing to properly train its employees. (Motion 13–15.) Plaintiff did not address these issues in his Response. (*See generally* Response.) Because there is no evidence in the record to support a claim that Carnival was negligent for failing to assess or inspect the gangplank and stairway or for failing to properly train its employees, the Court finds that Carnival is entitled to summary judgment on these theories of liability.[6]

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion for Summary Judgment (D.E. 42), filed on January 17, 2013, is **GRANTED**;

2. Final judgment for Defendant shall be issued by separate order pursuant to Rule 58(a) of the Federal Rules of Civil Procedure;

3. All pending motions are **DENIED AS MOOT**; and

4. This case is now **CLOSED**.

---

**6.** Because the Court finds that there is insufficient evidence in the record to support any of Plaintiff's theories of liability as set forth in his Complaint, the Court does not address Defendant's argument that Plaintiff has failed to establish evidence of medical causation. (*See* Motion 2, 15–16.)