[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10109
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-22807-KMW

SUSAN PLOTT,

                                   Plaintiff - Appellant,

versus

NCL AMERICA, LLC,

                                   Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 9, 2019)

Before WILSON, MARTIN, and NEWSOM, Circuit Judges.

PER CURIAM:

Susan Plott and her sister, Doris Guilfoyle, set sail on *Pride of America*, a cruise ship owned and operated by NCL America, LLC.  During the cruise, Plott slipped and fell on a puddle inside the ship.  Plott sued NCL,[1] alleging that NCL was negligent because it had notice of the puddle but failed to warn Plott of the dangerous condition.  NCL filed a motion for summary judgment, which the district court granted.  Plott now appeals, arguing that the district court erred in granting summary judgment because: (1) Plott established that NCL had notice of the dangerous condition and that the condition was not open or obvious; and (2) the district court excluded certain opinions of Plott's expert witness.  Because genuine issues of fact remain, we vacate and remand on the first issue.  But the exclusion of certain opinions of Plott's expert was proper, and we thus affirm on the second issue.

## I.  Background

### A.  Factual Background[2]

While aboard *Pride of the America* one night, Plott and Guilfoyle decided to take a soak in a hot tub on Deck 11 of the ship.  The hot tub is situated on an exposed deck near a pool and outdoor showers.  The hot tub is close to the Ocean

---

[1] Under the mandatory forum selection clause in her cruise ticket, Plott sued in the Southern District of Florida.

[2] The facts are described in the light most favorable to Plott.  *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant].").

2

Drive Bar, which is immediately adjacent to the Conservatory—a three-sided glass atrium that serves as a vestibule leading to the interior of the vessel.  Just beyond the Conservatory, inside the vessel and down two steps, is a bank of elevators that take guests to their cabins.

While the sisters soaked in the hot tub, it started to rain moderately hard for several minutes.  When it started to rain, between 12 and 20 people in the exposed bar area rushed to get out of the rain, passing the Ocean Drive Bar.  Although no one saw the group enter the Conservatory, the Conservatory is the closest entrance to the ship from the bar area.  There was no mat inside or outside the Conservatory entrance.  Plott and Guilfoyle stayed in the hot tub for about 10 to 15 minutes after the rain stopped.  Plott and Guilfoyle then exited the hot tub, took an outdoor shower to rinse off, and dried off with towels.  They retrieved their dry shoes, wrapped themselves in towels, and walked to the Conservatory.  When the sisters passed the Ocean Drive Bar, two crewmembers were there working.  This process took about ten minutes.  At this point, it had been as long as 25 minutes since the rain stopped.

Inside the Conservatory, the sisters approached the set of stairs that lead to the elevators.  Plott slipped, fell down the two stairs, and landed on her left side. The sisters each testified that they did not see anything on the floor until after Plott slipped.  After Plott slipped, Guilfoyle noticed colorless and odorless puddles on

the floor.  Guilfoyle, who was walking behind Plott when Plott slipped, testified that there were puddles beyond where her sister fell, suggesting that the liquid did not come from Plott.

NCL's corporate representative testified that the interior of the glass Conservatory could have been seen from the immediately adjacent bar.  The record indicates that from the time the group of passengers fled the deck to the time Plott slipped was approximately half an hour.  NCL conceded that the area was "continuously monitored," and the "entire crew" was responsible for identifying and promptly addressing any safety concerns, including by placing warning signs when appropriate.  NCL's corporate representative testified that if any NCL employee saw an accumulation of water on the floor, the employee would be expected to "either clean it up, cordon it off, and also put a warn[ing] sign."

### B.  Procedural History

The district court granted NCL's motion for summary judgment.  The district court concluded that (1) there was a genuine issue of material fact on whether the Conservatory floor constituted a dangerous condition when wet, but (2) even if the floor was slippery when wet and that this condition was dangerous, NCL had no notice of this dangerous condition.  The district court's grant of summary judgment for NCL thus turned on whether NCL had notice of the wet floor.

4

## II.  Summary Judgment

We review a district court's grant of summary judgment de novo, considering the facts and drawing reasonable inferences in the light most favorable to the non-moving party.  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[G]enuine disputes of facts are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant."  *Mann*, 588 F.3d at 1303 (quotation marks omitted).

Maritime law governs the liability of a cruise ship for a passenger's slip and fall.  *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015).  To prevail on a maritime negligence claim, a plaintiff must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

"Under maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances."  *Sorrels*, 796 F.3d at 1279 (quotation marks omitted).  That standard requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the

5

risk-creating condition." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989).  Regardless of notice, however, there is no duty to warn of dangers that are open and obvious.  *See, e.g.*, *Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 357 (5th Cir. 2016); *Samuels v. Holland Am. Line-USA, Inc.*, 656 F.3d 948, 954 (9th Cir. 2011).  A cruise ship operator is thus not liable if it did not have notice of the danger or if the danger was open and obvious.  *See Keefe*, 867 F.2d at 1322; *Deperrodil*, 842 F.3d at 357.

"A maritime plaintiff can establish constructive notice with evidence that the defective condition existed for a sufficient period of time to invite corrective measures."  *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (internal quotations omitted).

We conclude that there are genuine issues of material fact that remain about whether NCL had notice that the Conservatory floor was wet.  A reasonable factfinder could conclude that the puddle on which Plott slipped was water from the group of passengers that fled the bar area.  The sisters described the puddles as colorless and odorless.  Guilfoyle testified that there were puddles beyond where her sister slipped, indicating that the liquid did not come from either sister.  And both sisters testified that, around the time the wet passengers fled the rainstorm,

6

there were two crewmembers working at the Ocean Drive Bar.[3]  The Ocean Drive Bar is also immediately adjacent to the see-through glass Conservatory, the nearest entrance to the vessel for the group of wet passengers to avoid the rain.  The puddles remained in the area, which was "continuously monitored," for about half an hour before Plott slipped.

Drawing all reasonable inferences in Plott's favor, as we must, a reasonable factfinder could conclude that those crewmembers knew or should have known about the wet Conservatory floor and should have either removed the hazard or warned Plott of it.  *Cf. Alterman Foods, Inc. v. Ligon*, 272 S.E.2d 327, 330 (Ga. 1980) ("In some cases the proprietor may be held to have constructive knowledge if the plaintiff shows that an employee of the proprietor was in the immediate area of the dangerous condition and could have easily seen the substance and removed the hazard." (quotation marks omitted)); *Markowitz v. Helen Homes of Kendall Corp.*, 826 So.2d 256, 261 (Fla. 2002) ("The fact that there were three employees in the vicinity of where the fall occurred is sufficient to create a jury question as to whether [Defendant] exercised reasonable care under the circumstances to

---

[3] The district court discounted this evidence by asserting that Plott failed to: identify the employees by name, identify when exactly the employees were working, identify what the employees' responsibilities were at the time, or identify whether the employees actually saw the other passengers walking into the Conservatory.  Neither party presented evidence on these issues.  To require Plott to make those showings is inconsistent with the summary judgment standard, which requires the district court to view all facts in the light most favorable to Plott, not NCL.  *See Lee*, 284 F.3d at 1190.

7

maintain its premises in a safe condition."); *Thomas v. NCL (Bahamas) Ltd.*, 203 F. Supp. 3d 1189 (S.D. Fla. 2016) (holding that evidence that substance was on floor for 15 to 20 minutes was sufficient to establish material issue of fact on constructive notice).

We also conclude that a reasonable factfinder could conclude that the condition was not open and obvious.  The district court did not reach this issue.  To determine whether a condition is open and obvious, we ask whether a reasonable person would have observed the condition and appreciated the nature of the condition.  *See Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1345 (S.D. Fla. 2015); *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345–46 (S.D. Fla. 2015). The sisters described the puddles as colorless and odorless.  Plott and Guilfoyle testified that they did not see anything on the floor until after Plott slipped and fell. We cannot conclude, as a matter of law, that a reasonably prudent person through the exercise of common sense and the ordinary use of her senses would have clearly seen a colorless and odorless puddle on the floor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

### III.  Exclusion of Expert Testimony

Plott also argues that the district court erred by excluding certain opinions of her expert witness, William Martin.  "We review the district court's decision to exclude expert testimony under Federal Rule of Evidence 702 for abuse of discretion."  *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1281 (11th Cir. 2015) (alterations and quotations omitted).  "A district court abuses its discretion when it makes a clear error in judgment or applies an incorrect legal standard."  *Id.*

The district court concluded that Martin could not testify that it was "unreasonable" for NCL not to provide floor mats outside the Conservatory doors and not to provide warning signs.  The court correctly reasoned that those opinions constitute legal conclusions, which are not a proper topic of expert testimony.  *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness . . . may not testify to the legal implications of conduct; the court must be the jury's only source of law.").  The district court also excluded Martin's opinions that floor mats would have prevented the accident and that the floor was in fact wet at the time of the accident because those opinions were based on pure speculation and were therefore inadmissible.  We agree with the district court that Martin's expert report did not demonstrate how his experience as an architect led to his conclusions and opinions, why that experience was sufficient, or how his experience applied to Plott's case.  We thus conclude that the district court did not abuse its discretion in excluding those opinions.  *See Kumho Tire Co. v.*

9

*Carmichael,* 526 U.S. 137 (1999) (holding that Rule 702 imposes an obligation on federal trial courts to ensure that every item of expert testimony has "a reliable basis in the knowledge and experience of the relevant discipline." (alterations and quotations omitted)).

## IV. Conclusion

The district court erred in granting summary judgment on whether NCL was on notice of the dangerous condition because genuine issues of material fact remain. We therefore vacate and remand on the first issue for further proceedings consistent with this opinion. We affirm, however, on the second issue because the district court did not abuse its discretion in excluding certain portions of Plott's expert's testimony.

**VACATED AND REMANDED IN PART, AFFIRMED IN PART.**