Kenneth LANCASTER, Plaintiff,

v.

**CARNIVAL CORPORATION, d/b/a Carnival Cruise Lines, Defendant.**

Case No. 1:14–cv–20332–KMM.

United States District Court, S.D. Florida.

Signed Feb. 9, 2015.

Michael D. Eriksen, Eriksen Law Firm, West Palm Beach, FL, for Plaintiff.

Darren Wayne Friedman, Jeffrey Eric Foreman, Marcus G. Mahfood, Foreman Friedman, PA, Miami, FL, for Defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

K. MICHAEL MOORE, Chief Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (ECF No. 45) (the "Motion"). Plaintiff filed a Response (ECF No. 69) and Defendant filed a Reply (ECF No. 80). The Motion is therefore ripe for review. UPON CONSIDERATION of the Motion, Plaintiff's Response, Defendant's Reply, Plaintiff's Complaint (ECF No. 1), other pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I. BACKGROUND

On October 8, 2012, Plaintiff and his girlfriend were walking through Defendant's cruise ship at the end of a four-day cruise to Mexico. Pl.'s Resp. at 1. Plaintiff and his girlfriend had eaten breakfast and were returning to their cabin at approximately 8:30 a.m.[1] *Id.* As they exited an elevator onto a narrow corridor on Deck 6 (the "Corridor"), they encountered a crowd of twenty to twenty-five people sitting in the Corridor with their luggage. *Id.;* Lancaster Dep. (ECF No. 44–1) at 92–95. The cruise ship had begun its debarkation[2] procedures, in which all passengers must be packed and out of their cabins by 8:30 a.m. Boenninghausen Dep. (ECF No. 50–1) at 124. However, the cruise ship staggers the time at which passengers are allowed to actually exit the ship, based on designated zones, to keep the line of debarking passengers flowing steadily and to avoid gridlock and crowding. *Id.* at 136–141. Hence, the crowd of passengers that had formed in the Corridor around 8:30 a.m. had left their rooms and were either awaiting further debarkation instructions or waiting for their designated exit time.

Plaintiff was seventy-one years old at the time and has mobility problems, Lancaster Dep. at 31–32, 64, 52–54, so his girlfriend walked in front of him as they traversed the crowded Corridor. The Corridor was crowded enough that Plaintiff had to weave back and forth in order to progress. *Id.* at 96. Unfortunately, Plaintiff tripped over what he believes to be a piece of luggage and hit his head on the ship's deck. *Id.* at 93–97. He was treated in the ship's hospital and alleges he suffered a traumatic brain injury. *Id.* at 110, 121; Compl. ¶ 32.

Plaintiff filed a one-count Complaint (ECF No. 1) alleging a negligence claim against Defendant for (1) failing to adequately warn passengers of the dangers of crowding during debarkation, and (2) failing to take adequate precautions and follow proper procedures to prevent a crowd from forming in the Corridor. Compl. ¶ 33.G. Defendant moves for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any

---

1. Plaintiff states in his deposition that he was on his way to breakfast but states in his Response that he was returning from breakfast. It is irrelevant for purposes of this Order whether Plaintiff was going to breakfast or returning from breakfast at the time.

2. "Debarkation" is the term the Parties use to describe the process whereby passengers leave or disembark from the cruise ship *en masse.*

material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* However, if the nonmoving party's evidence and arguments are merely colorable and raise only some doubt, summary judgment may be granted in favor of the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the burden of meeting this standard, *id.,* and the district court views the evidence and makes all factual inferences therefrom in the light most favorable to the nonmoving party. *Tyson Foods,* 121 F.3d at 646.

## III. ANALYSIS

■ To establish a claim for negligence, a maritime plaintiff must show: (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm. *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1336 (11th Cir.2012).

### A. *Duty*

#### 1. *Duty to Warn*

As one of the two theories for his negligence claim, Plaintiff argues that Defendant breached its duty to adequately warn passengers about the dangers of crowded corridors during debarkation. Compl. ¶ 33.G. Specifically, Plaintiff points to (1) the piece of luggage and (2) the crowd in the Corridor, as the dangers about which he should have been warned. Defendant argues that summary judgment is appropriate because Defendant owed no duty to warn Plaintiff about the dangers of the crowd or the luggage given that they are open and obvious conditions. Mot. at 9–12.

■ Under maritime law, cruise ship operators must warn passengers of known dangers that are neither apparent nor obvious to passengers. *Aronson v. Celebrity Cruises, Inc.,* 30 F.Supp.3d 1379, 1392 (S.D.Fla.2014). On the other hand, there is no duty to warn passengers of open and obvious dangers. *Cohen v. Carnival Corp.,* 945 F.Supp.2d 1351, 1357 (S.D.Fla. 2013). Open and obvious conditions are those that should be obvious by the ordinary use of one's senses. *See Luby v. Carnival Cruise Lines, Inc.,* 633 F.Supp. 40, 42 (S.D.Fla.1986).

■ Here, both the luggage and the crowd are open and obvious conditions, thus Defendant owed no duty to warn Plaintiff of them. Plaintiff exited the elevator to the Corridor and saw that there was a crowd of twenty to twenty-five people in the process of disembarking from the cruise ship. The fact that a bag of luggage may be lying on the ground amongst a crowd is discernible through common sense and the ordinary use of eyesight.[3] There is nothing hidden, for

---

**3.** Though analysis of whether a condition is open and obvious is not applied from the

subjective standpoint of what Plaintiff actually perceived, the Court notes that Plaintiff saw

purposes of a duty to warn analysis, about a piece of luggage lying in a cruise ship's corridor during passenger debarkation. Defendant therefore had no duty to warn Plaintiff of the luggage he allegedly tripped over.

As for the crowd, there likewise was nothing hidden about it or the danger it presented. The crowd in the Corridor was so congested that Plaintiff could only make progress by weaving back and forth as he walked. Lancaster Dep. at 96. However, crowds and the dangers they present are open and obvious by nature. For instance, the obscuring of objects on the ground is an obvious consequence when too many people occupy a confined area. Defendant therefore had no duty to warn Plaintiff of the crowd or its dangers.

Accordingly, Defendant owed no duty, as a matter of law, to warn Plaintiff of the luggage or the crowd. The Court therefore GRANTS summary judgment against Plaintiff's duty to warn theory.

### 2. *General Duty of Reasonable Care*

■ The Court's analysis does not end with the duty to warn inquiry, however, because Defendant still owed Plaintiff a general duty of reasonable care. In particular, Defendant owed its passengers the ordinary duty not to unreasonably create or cause (through selecting and dictating the manner of debarkation) a hazardous condition that in turn injures a passenger. *See Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1322 (11th Cir.1989) (analyzing cruise shipowner's duty to prevent slippery dance floor under "reasonable care" framework but not under "duty to warn" framework); *Rockey v. Royal Caribbean Cruises, Ltd.,* 2001 WL 420993, *4 (S.D.Fla. Feb. 20, 2001) (applying general duty of reasonable care analysis where "[d]efendant's knowing selection of the

manner and location of [a] [bingo] board's placement and storage[ ] [was] alleged to have created an unsafe or foreseeably hazardous condition.").

In other words, Defendant also has a duty not to unreasonably create or allow a crowd to form in the Corridor such that the crowding causes injuries to passengers. This duty is discharged not by warnings, but rather by implementing and exercising the due level of debarking safety procedures intended to prevent crowding. This would include an adequate level of: signage; safety videos; debarking videos, announcements, and instructions; Defendant's own debarking protocols; and debarking crowd-management personnel. *See generally* Boenninghausen Dep. Accordingly, because Defendant owed Plaintiff the aforementioned general duty of reasonable care, summary judgment against this element, as a whole, is DENIED. As stated previously, however, Plaintiff's duty to warn theory is precluded by summary judgment.

### B. *Breach*

■ Plaintiff argues that the standard of care Defendant owed Plaintiff is that of "the highest duty of care," which Plaintiff contends stems from the passenger-common carrier relationship. Pl.'s Resp. at 3–7. This is incorrect and is an issue this Court already addressed in its Order on Defendant's Motion to Dismiss. *See* August 19, 2014 Order (ECF No. 25). It is well-settled that a shipowner owes its passengers the duty of exercising ordinary reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); *Chaparro,* 693 F.3d at 1336; *Aronson,* 30 F.Supp.3d at 1392. Hence, the Court declines to ana-

---

the bags in the Corridor and knew that they were there because passengers were debark-

ing the ship. Lancaster Dep. (ECF No. 441) at 84, 92, 94–95.

lyze this element under a heightened duty of care. *See Chaparro*, 693 F.3d at 1336.

■ As stated previously, Defendant has a duty not to unreasonably create or allow crowds to form in its corridors in a manner hazardous to passengers. The precautions necessary to adhere to this standard include, among other things, maintaining an adequate degree of: signage; safety videos; debarking videos, announcements, and instructions; debarking protocols; and debarking crowd-management personnel. *See generally* Boenninghausen Dep. Thus, to survive summary judgment, a reasonable juror viewing the evidence in the light most favorable to Plaintiff must be able to conclude that Defendant failed to utilize a reasonable amount of the aforementioned precautions. Specifically, Plaintiff argues only that Defendant failed to have a sufficient number of crowd-management personnel to ensure that it could identify and break up the crowd. Consequently, there must be evidence in the record that: (1) there were no crowd-management personnel in the Corridor at the time Plaintiff was injured; (2) if a crowd-management attendant had been in the Corridor, he or she would have disbursed the crowd; and (3) it would have been feasible to have a crowd-management attendant in the Corridor.

First, Defendant does not dispute that there were no crowd-management personnel in the Corridor at the time Plaintiff fell. Def.'s Reply at 10.

Second, there is evidence in the record that if a crowd-management attendant had been in the Corridor he or she would have disbursed the crowd. Boenninghausen Dep. at 190–91, 200–03. Defendant dedicates staff during debarkation specifically to break up any congestion in the ship's corridors. *Id.*

Third, there is evidence in the record that it is feasible to dedicate more personnel to crowd-management during debarkation. *Id.* at 151–52, 157, 174, 201. For instance, Defendant's Corporate Representative stated that Defendant dedicates at least ten crowd-management personnel to the area near the Corridor during its emergency "muster" drill, *id.* at 151–52, whereas it dedicates only four or five to that area during debarkation. *See id.* at 157, 174, 201.

Viewing the foregoing evidence in the light most favorable to Plaintiff, a reasonable juror could find that Defendant failed to exercise due care by failing to maintain sufficient crowd-management personnel in and around the Corridor, the result of which was the crowding that caused Plaintiff to fall.

### C. *Cause*

■ Plaintiff alleges that the crowding in the Corridor caused him to stumble over a piece of luggage. Compl. ¶¶ 30, 32. Defendant argues that there is no evidence of causation because "there is no evidence that Plaintiff actually tripped over a piece of luggage," as opposed to tripping on his own. Mot. at 5. Importantly, Defendant does not argue that it did not cause the crowding via its debarking procedures.[4] Therefore, Defendant's causation argument rests solely on its assertion that there is no evidence that a piece of luggage is what actually tripped Plaintiff.

Defendant's argument fails because there is evidence in the record sufficient for a reasonable juror to conclude that Plaintiff tripped on luggage. Although Plaintiff stated at one point in his deposition that he never saw what he tripped over, Lancaster Dep. at 105, he also stated

---

**4.** As noted before, passengers were required to be packed and out of their rooms by 8:30 a.m., but the times during which passengers were actually allowed to begin exiting the ship were designated and staggered.

at other times that he saw the bag he tripped over and he described it in detail. *Id.* at 21–22, 100, 102. Defendant argues that Plaintiff's account should be ignored because it is internally inconsistent, Mot. at 3; however, implicit in Defendant's argument is its concession that the record contains evidence that Plaintiff tripped over a piece of luggage. *See e.g.*, Lancaster Dep. at 21–22, 100, 102. The inconsistency in Plaintiff's account is a credibility and fact-finding determination for the jury, but the evidence when viewed in the light most favorable to Plaintiff could lead a rational juror to conclude that Plaintiff tripped over a piece of luggage.

### D. *Harm*

The Parties do not dispute that Plaintiff was injured as a result of his fall. The measure of damages, however, is an issue solely within the trier of fact's purview.

### IV. CONCLUSION

Based on the foregoing, it is:

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART as follows:

Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's duty to warn theory of negligence; and

Defendant's Motion for Summary Judgment is DENIED as to Plaintiff's reasonable care theory of negligence.