2015 IL App (1st) 143162

No. 1-14-3162

FIFTH DIVISION
January 15, 2016

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| LANA SCHADE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 L 6596 |
| | ) | |
| MARK CLAUSIUS and PAULETTE CLAUSIUS, | ) | Honorable |
| | ) | Jeffrey Lawrence, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justice Palmer specially concurred, with opinion.
Justice Gordon dissented, with opinion.

**O P I N I O N**

¶ 1    Plaintiff Lana Schade sued defendants, Mark and Paulette Clausius, for negligence concerning injuries plaintiff allegedly sustained when she was a guest onboard their boat. Defendants moved for summary judgment, and the circuit court granted that motion.

¶ 2    Plaintiff appealed, contending summary judgment was precluded by the existence of genuine issues of material fact as to whether defendants were negligent for creating a dangerous condition that proximately caused plaintiff's injury and failing to warn her that the crowded swim

platform she walked on could become dangerously slippery if water collected on it.

¶ 3     We hold that the circuit court did not err in granting summary judgment in favor of the defendant boat owners. Because the alleged danger posed by the condition of the swim platform on the defendants' boat was open and obvious, there was no genuine issue of material fact concerning whether the defendants violated either a general duty of care by unreasonably creating a dangerous condition or a duty to warn.

¶ 4                                    I.   BACKGROUND

¶ 5     On July 4, 2010, plaintiff was a guest onboard one of four boats that had sailed to a location on Lake Michigan and then anchored and tied off one to the other, side by side. The boat on which plaintiff was a guest tied up alongside defendants' boat, which was a 52 foot, 2008 Sea Ray Sundancer. At the rear of defendants' boat were a stern deck and a swim platform. The defendants also owned a yacht tender, a Zodiac Projet 350, which would be secured on the swim platform when the tender was not in the water. The swim platform could be lowered to below water level to allow the tender to be driven off or onto the boat. The swim platform was also used as a place from which people could swim off the boat or dangle their legs in the water while sitting on the edge of the swim platform. At the time of the alleged incident, defendant Mark Clausius was giving guests rides on the tender, which could hold four or five people. According to plaintiff, she slipped and fell on defendants' boat when she walked over to a group of people waiting to ride the tender.

¶ 6     In June 2012, plaintiff filed a complaint alleging negligence against defendants. In her amended complaint, plaintiff alleged that she slipped as a result of accumulated water on the boat deck and suffered serious and permanent injuries. Plaintiff argued defendants violated their duty to exercise reasonable care for the safety of their guests by failing to: ensure that water did not

accumulate on the boat deck; remove water that had accumulated on the boat deck; and warn guests that water had accumulated on the boat deck.

¶ 7      In their answer, defendants denied the allegations of negligence and asserted that plaintiff's negligence, including her failure to exercise due care, notice an open and obvious condition, and wear proper footwear, caused or contributed to cause her injuries.

¶ 8      Defendants moved for summary judgment, arguing there were no genuine issues of material fact and plaintiff could not make a *prima facie* case of negligence against defendants. Specifically, defendants argued that plaintiff testified in her deposition that she fell, not while on defendants' deck, but rather while she was walking on defendants' swim platform. Defendants stated that the swim platform was just above the water level and being used by other guests to jump into the water or transfer to or from other boats and, thus, was likely to have water on its surface. Defendants argued that such a condition would be open and obvious and not give rise to a duty to warn by defendants. In addition to the pleadings and responses to interrogatories, defendants attached to their motion the depositions of plaintiff and defendants, the boat manual and insurance policy, and photographs taken onboard the boat on the date of the alleged incident.

¶ 9      Plaintiff testified in her deposition that the date of the incident was a nice, sunny day. She did not consider herself to be an experienced boater but had been on boats before and knew that water could get on boats. She did not drink alcohol that day because she was driving. Plaintiff did not recall seeing anyone jump in the water from any of the tied-off boats. She stepped over the side of her host's boat to cross over onto defendants' boat because she wanted to join the other guests on defendants' boat. She entered the deck of defendants' boat and stayed for a period of time but then crossed over to a larger boat because she wanted to see it. After 10 or 15 minutes, she returned

to defendants' boat and saw a group of people on the swim platform waiting for defendant Mark Clausius to give them a ride on the tender. Plaintiff walked down steps from the rear deck and stepped onto the swim platform. She could not see if the swim platform was wet because "many" people were standing on it. Plaintiff could not recall how many people were standing on the platform, and she conceded that there was room for her to walk on the platform. She took a few steps as she wove herself around the other guests on the swim platform and then slipped and fell. She used her right hand to break her fall. Two men helped her up, and one said that he had also fallen. Plaintiff thought she was okay and did not mention to anyone else that she fell. She went back up the steps and returned to the sitting area of defendants' rear deck. She stayed on defendants' boat through the fireworks show. After the fireworks show, the boats returned to the pier, and plaintiff drove home with her friend. She had some pain in her right arm, which made driving difficult. Thereafter, she was experiencing pain in her right shoulder, went to a doctor a couple of days after the fall, and learned that she had torn her rotator cuff. Eventually she had surgery to repair the rotator cuff, but she suffered complications and had chronic pain.

¶ 10    Defendant Mark Clausius testified that he was an experienced boater, had his boats inspected by the coast guard every year to ensure they were up to standards, and was not aware of any safety issues concerning wet decks on boats at the time of plaintiff's alleged slip and fall. He never had an injury on any of the boats he owned. The fiberglass swim platform at issue was manufactured with a raised surface that was considered to be skid-proof. Specifically, the non-skid material was built into the rough-cut fiberglass and was raised about 3/16 of an inch, so there was never a smooth, flat surface. The swim platform also had cut-outs that allowed water to drain from the platform. Mr. Clausius never saw anyone slip and fall on one of his boats in his forty-odd years

4

of boating. On the date in question, the swim platform was in constant use. People used it to swim, cross over onto defendants' boat from the other tied-off boats, board the tender, or just sit and cool off. Mr. Clausius also used the swim platforms or rear decks of the other tied-off boats to give guests rides on the tender. Mr. Clausius first became aware of plaintiff's alleged fall about a year and a half after it happened, when plaintiff's friend asked Mr. Clausius for his insurance information. Mr. and Mrs. Clausius subsequently contacted many of the guests who had been on their boat on the date in question, and none of them had observed plaintiff fall or been informed that she had fallen. Mr. Clausius recalled that when the boats returned to the pier after the fireworks show, he and his wife observed plaintiff help support her friend, who appeared to be inebriated and was having difficulty walking, as plaintiff and her friend left the dock and walked to their car in the parking lot.

¶ 11   Defendant Paulette Clausius testified consistently with her husband.

¶ 12   In response to the summary judgment motion, plaintiff argued that genuine issues of material fact existed concerning whether the risk of plaintiff slipping and falling on water on the swim platform was open and obvious where plaintiff had no meaningful experience on a boat like defendants' boat and could not see water on the platform because defendants had allowed it to become crowded with guests waiting for a ride on the tender. Plaintiff argued defendants improperly used the swim platform as a holding area for a large number of guests awaiting rides on a tender, failed to warn guests that the swim platform could be dangerously slippery, and failed to ensure that there was a rail or support for guests to hold onto when moving about the swim platform. Plaintiff attached an affidavit to her response, stating, *inter alia*, that after she slipped and fell and returned to the sitting area of defendants' rear deck, she noticed water on her hands

5

and arms and dampness on the seat of her pants from where she had contact with the swim platform when she tried to break her fall.

¶ 13    Plaintiff also attached the affidavit of her maritime expert, James Allen, who opined, *inter alia*, that defendants' failure to use reasonable care caused plaintiff's injury because defendants should have anticipated that guests like plaintiff would have no meaningful experience moving about a boat; defendants used the swim platform for an unintended purpose—as a crowded place to embark and disembark multiple passengers on the tender at one time; defendants failed to provide safety instructions, adequate supervision and assistance to their guests as they used the swim platform; and defendants failed to warn guests that the swim platform was dangerously slippery.

¶ 14    However, according to his deposition, Mr. Allen testified that defendants were not required by any law, rule, code or standard to provide any support or structure to help plaintiff maintain her balance while on the swim platform; embarking and disembarking the tender was an intended purpose of the swim platform; plaintiff did not know how many people were on the swim platform at the time of the alleged incident and there was no rule or standard for how many people should be on the swim platform at one time; and there was no evidence that defendants caused water to accumulate on the swim platform by driving the tender up to and away from the swim platform.

¶ 15    The circuit court granted summary judgment in favor of defendants, finding that the condition about which plaintiff complained was open and obvious. Plaintiff timely appealed.

¶ 16                                    II.   ANALYSIS

¶ 17    Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Steadfast Insurance Co. v. Caremark Rx,*

*Inc.*, 359 Ill. App. 3d 749, 755 (2005). All evidence must be construed in the light most favorable to the nonmoving party and strictly against the moving party. *Pearson v. DaimlerChrysler Corp.*, 349 Ill. App. 3d 688, 697 (2004). We review a trial court's entry of summary judgment *de novo*. *Ragan v. Columbia Mutual Insurance Co.*, 83 Ill. 2d 342, 349 (1998).

¶ 18    "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 120 (1992). A defendant moving for summary judgment bears the initial burden of proof, and may meet this burden either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

¶ 19    Although plaintiff need not prove her case at the summary judgment stage, she must present sufficient evidence to create a genuine issue of material fact. See *Wiedenbeck v. Searle*, 385 Ill. App. 3d 289, 292 (2008). "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The court determines the existence or absence of a genuine issue as to any material fact from the affidavits, depositions, admissions, exhibits and pleadings in the case. *Carruthers v. B.C. Christopher & Co.*, 57 Ill. 2d 376, 380 (1974).

¶ 20    The parties agree that, because the alleged injury occurred on navigable waters and the parties were engaged in a traditional maritime activity, this case falls within admiralty jurisdiction and federal maritime law applies. *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 674-75 (1982); *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959). In order to

establish a claim of negligence under federal maritime law, plaintiff must present sufficient evidence to establish defendants breached a duty to protect her from a particular injury, the breach was the proximate cause of her injuries, and she suffered damages as a result of her injuries. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

¶ 21    On appeal, plaintiff argues the circuit court erred in granting summary judgment because there was ample evidence in the record to support the proposition that defendants were negligent and breached their duty to exercise due care for the safety of their guests.

¶ 22                        A.   Unreasonable Creation of a Hazardous Condition

¶ 23    First, plaintiff contends defendants breached a duty to her by creating a dangerous condition by encouraging, directing and allowing a large number of people to crowd onto the swim platform and thereby hindering plaintiff's ability to observe the hazardous wet condition of the platform. Plaintiff contends defendants failed to supervise the activity of giving guests tender rides and created a dangerous condition whereby the guests walked or stood on the crowded swim platform without the benefit of any handrail or other support. Plaintiff asserts that under these circumstances, it was easily foreseeable that one of the guests, in moving about the swim platform to wait for a ride on the tender, would slip and fall on the swim platform because it had been rendered dangerously slippery due to water that had collected on it.

¶ 24    Defendants respond that there is no genuine issue of material fact on which a jury could conclude that defendants breached their duty to exercise reasonable care under the circumstances.

¶ 25    It is a well-settled principle of maritime law that a boat-owner owes passengers the duty of exercising reasonable care under the circumstances. *Kermarec*, 358 U.S. at 629. Reasonable care

includes the ordinary duty not to unreasonably create or cause a hazardous condition that in turn injures a passenger. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). In order to prove that defendants breached their duty to plaintiff while she was onboard their boat, plaintiff must show that a dangerous condition existed and defendants had actual notice of the dangerous condition. *Id.* However, plaintiff need not prove notice where she also alleges that defendants created the dangerous condition. See *McLean v. Carnival Corp.*, No. 12-2495, 2013 WL 1024257, at *4 (S.D. Fla. Mar. 14, 2013). A dangerous condition is one that is not apparent or obvious to the passenger. *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2009). Open and obvious conditions are those that should be obvious by the ordinary use of one's senses. See *Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 42 (S.D. Fla. 1986). The mere fact that an accident occurred does not give rise to a presumption that the setting of the accident constituted a dangerous condition. See *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006).

¶ 26    Plaintiff contends there is a genuine issue of material fact as to whether defendants created a dangerous condition when they offered guests rides on their tender from their swim platform. An issue of fact is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). However, if the evidence and arguments of plaintiff, as the non-moving party, are merely colorable and raise only some doubt, summary judgment may be granted in favor of defendants, as the moving parties. See *id.* "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 252 (1986)).

¶ 27    After reviewing the record, we conclude that there is no genuine issue of material fact as to

whether defendants created a dangerous condition when they offered guests rides on their tender from their swim platform. First, we note that the record does not support plaintiff's assertion that defendants allowed their swim platform to become unreasonably crowded. In her deposition, plaintiff did not know how many guests were on the swim platform and conceded that she saw before she stepped onto the platform that there was room for her to walk on it to wait for a ride on the tender. Moreover, she was able to walk around the other guests on the platform and does not allege that she fell because she was jostled by the other guests. In addition, plaintiff's navigation expert conceded that the swim platform was intended to be used, *inter alia*, for getting on and off a tender. The expert also conceded that he did not know how many people were on the swim platform at the time of the alleged incident and there was no rule or standard regarding how many people should be on the swim platform at one time. The expert also conceded that defendants were not required by any law, rule, code or standard to provide any support or structure on the swim platform for guests to hold onto for balance. There was no testimony or other evidence that defendants exceeded any weight or passenger limit for their type of vessel.

¶ 28    The lack of evidence of unreasonable crowding notwithstanding, the dispositive issue in this case is the open and obvious nature of the complained-of condition. Under the circumstances of this case, both the number of guests on the swim platform and the potential for the swim platform to be wet were open and obvious conditions and, thus, did not constitute dangerous conditions under federal maritime law. Plaintiff noticed the group of guests standing on the swim platform waiting to ride the tender and decided that she, too, wanted a ride on the tender. Crowds and the dangers they present by possibly obscuring objects or conditions on the ground are open and obvious by nature. *Lancaster v. Carnival Corp.*, No. 1:14-CV-20332, 2015 WL 545499, at *4 (S.D. Fla. Feb 9, 2015). Plaintiff also knew the swim platform was close to the water level because

she descended steps from the rear deck to reach the swim platform and saw that Mr. Clausius was driving the tender up to the swim platform to enable guests to get on and off the tender. The fact that water might be on the swim platform amongst the group of waiting guests was discernible through common sense. There was nothing hidden about the group of people on the swim platform or any water that may have been on the swim platform where many guests had been using it throughout the day to swim, enter defendants' boat, or step on or off the tender. Moreover, photographs taken on the date of the incident show numerous guests wearing swimsuits, and defendants testified that guests were using the swim platform throughout the day to jump in or exit the water. Although plaintiff claims she was not an experienced boater and was unfamiliar with the particular type of boat defendants' owned, she had been on boats before, knew that water could get on a boat, and should have been aware of the potential hazards associated with walking on a swim platform that could be wet.

¶ 29    To support her argument that defendants owed and breached their duty to exercise reasonable care under the circumstances, plaintiff cites *Lancaster*, 2015 WL 545499, at *3-4, where the court found a cruise ship operator, by selecting and dictating the manner by which passengers must debark from the ship at the end of a four-day cruise, owed a duty not to unreasonably create or allow crowds to form in its corridors during the debarkation process such that the crowding caused injuries to passengers. In *Lancaster*, the cruise ship had required all passengers to be packed and out of their cabins but staggered the time at which passengers were allowed to actually exit the ship to avoid gridlock and crowding. *Id*. at *1. The plaintiff alleged that he was injured when he walked through a corridor crowded with passengers waiting, as mandated by the cruise ship, to exit the ship. *Id*. As the plaintiff wove back and forth through the crowd to make progress in the crowded corridor, he tripped over what he believed to be a piece of luggage

and hit his head on the ship's deck. *Id*. The court found the defendant's duty not to unreasonably create crowds during debarkation could not be discharged by warnings, but rather by implementing and exercising debarking safety procedures that included signage, videos, announcements, instructions, and crowd-management personnel. *Id*. at *4.

¶ 30    Plaintiff's reliance on *Lancaster* is misplaced as that case is distinguishable. Whereas *Lancaster* involved an injury that occurred in an interior corridor during a crowded cruise ship's mandated debarking protocol at the conclusion of the cruise, the instant case involves the outdoor swim platform of a much smaller recreational vessel. Moreover, the walking, standing and waiting on the swim platform at issue here was in no way similar to the cruise line's debarkation protocol at issue in *Lancaster*. Mr. Clausius did not mandate that all guests had to ride the tender and wait on his boat's swim platform in order to do so. Rather, the evidence showed that Mr. Clausius offered tender rides to interested guests and drove to the swim platforms or rear decks of his and the other tied-up boats to allow guests to get on and off the tender.

¶ 31    Viewing the evidence and making all factual inferences therefrom in the light most favorable to plaintiff, a reasonable juror could not find that defendants created a dangerous condition by allowing their swim platform to become unreasonably crowded where the size of the group of people on the platform was an open an obvious condition and there was room for plaintiff to step onto and walk on the swim platform without being jostled by any of the other guests on the platform. Accordingly, summary judgment in favor of defendants was proper on the issue of whether defendants violated their general duty of care by unreasonably creating a hazardous crowding condition on their swim deck that caused injuries to passengers.

¶ 32                                  B.   Duty to Warn

¶ 33    Plaintiff also argues defendants breached their duty to adequately warn guests about the

danger of standing on a crowded swim platform that could become wet. Plaintiff contends the crowded condition of the platform prevented her from ascertaining that the platform was wet and, thus, slippery. Defendants respond that summary judgment was appropriate because they did not owe plaintiff a duty to warn of possible water on the open swim platform where people were involved in water activities and any possible danger posed by the guests on the wet swim platform was open and obvious.

¶ 34    Under maritime law, ship owners must warn passengers of known dangers that are neither apparent nor obvious to passengers. *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1392 (S. D. Fla. 2014). However, there is no duty to warn passengers of open and obvious dangers. *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1357 (S.D. Fla., 2013). Open and obvious conditions are those that should be obvious by the ordinary use of one's senses. See *Luby*, 633 F. Supp. at 42.

¶ 35    As discussed in detail above, both the number of people standing on the swim platform and the potential for the swim platform to be wet were open and obvious conditions. Thus, defendants owed no duty to warn plaintiff of any danger posed by those conditions. See *Lancaster*, 2015 WL 545499, at *2-3 (the defendant owed no duty to warn the plaintiff about the open and obvious conditions of the crowded cruise ship corridor and obscured luggage). There was nothing hidden, for purposes of a duty to warn analysis, about the group of people on the swim platform or any water that may have been on the swim platform where many guests were using the swim platform throughout the day to swim, enter defendants' boat, or step on or off the tender. Defendants therefore had no duty to warn plaintiff of the condition of the swim platform she allegedly slipped and fell on.

¶ 36    Plaintiff argues that the wet condition of the platform was not obvious because the "many"

people standing on it hindered her ability to see whether the surface of the platform was wet. We disagree. Plaintiff had watched people wait on the swim platform and get on and off the tender from the platform. It would not be unreasonable to think that water would be present on the swim platform from this activity. It is clear that the presence of the alleged danger—the wet swimming platform with people standing on it waiting for their turn to ride the tender—was, or should have been, obvious to plaintiff by the ordinary use of her senses. Accordingly, defendants did not breach their duty of care to plaintiff.

¶ 37    Plaintiff cites *Samuelov v. Carnival Cruise Lines, Inc.*, 870 So. 2d 853, 856 (Fla. Ct. App. 2003) (quoting *Kloster Cruise Ltd. v. Grubbs*, 762 So. 2d 552, 555 (Fla. Dist. Ct. App. 2000)), for the proposition that a " 'property owner is not absolved of responsibility where the owner has reason to believe that others will encounter the dangerous condition regardless of the open and obvious nature of the condition.' " In *Samuelov*, the plaintiff passenger boarded a tender from his cruise ship to take a shore excursion. *Id*. at 855. There were no available seats on the covered lower deck of the tender so the plaintiff went upstairs to the exposed upper deck of the tender to find a seat. *Id*. It was raining, but the plaintiff did not feel that he could descend the stairs because other passengers were waiting behind him. He walked on the upper deck, slipped, fell and broke his hip. *Id*. The trial court granted the cruise line a directed verdict on the ground that the condition on the tender that caused the plaintiff's injury was open and obvious, but the appellate court reversed and held the case should have proceeded to a jury verdict. The court found that the "fact that passengers would have to cross the wet, slippery exposed upper deck of the tender should have been reasonably anticipated by [the cruise line]." *Id*. at 856. Here, plaintiff argues she had no choice but to maneuver about the crowded and wet swim platform in order to accept defendants' invitation to take a ride on the tender.

¶ 38    Plaintiff's reliance on *Samuelov* is misplaced because her injury did not occur on the boat deck. Although plaintiff initially alleged in her complaint that she slipped and fell on defendants' deck, she later clarified in her deposition that she slipped and fell on their swim platform. We find this case more similar to an unreported case, *Mendel v. Royal Caribbean Cruises, Ltd.*, No. 10-23398-CIV, 2012 WL 2367853, at * 1 (S.D. Fla. June 21, 2012), where the plaintiff slipped on a step while exiting a pool on the defendant's cruise ship and alleged, *inter alia*, that the defendant failed to warn her of the alleged dangerous condition. The plaintiff and her husband had not used the pool prior to the date the incident occurred. They exited the pool using the handrails to climb the ladder out of the pool. Immediately after exiting the pool, the plaintiff placed her foot on a step designed to assist guests in exiting the pool and fell when she took a second step. The court held that summary judgment in favor of the defendant was proper because the defendant had no duty to warn the plaintiff of the possible dangers presented by exiting the pool. Specifically, the court found that the steps used to exit the pool were obvious; the plaintiff had just watched her husband exit the pool using those steps; it was not unreasonable to think water would be present around the pool; and the presence of the alleged danger was, or should have been, obvious to the plaintiff by the ordinary use of her senses. *Id*. at *3.

¶ 39    Like the pool steps in *Mendel*, the condition in the present case of the group of people standing and waiting on the swim platform was obvious; it was not unreasonable to think water would be present on the swim platform; and the presence of the alleged danger was, or should have been, obvious to plaintiff by the ordinary use of her senses. We conclude that defendant had no duty to warn plaintiff of the possible dangers presented by walking and waiting on the swim platform for a ride on the tender. See *Luther v. Carnival Corp.*, No. 14-CV-20132, 2015 WL 1727697 (S.D. Fla. Apr. 1, 2015) (cruise ship had no duty to warn or protect passenger who slipped

and fell on ship deck following a period of rainy weather where the passenger was aware of the open and obvious danger of the wet deck, and there was no evidence the deck was unusually slippery or that there were similar accidents on the deck surface in the past).

¶ 40                                    C.   Distraction Exception

¶ 41     Plaintiff also argues that summary judgment was not appropriate because a distraction exception applies in open and obvious hazard cases. Plaintiff asserts that, even if the accumulated water on the swim platform was open and obvious, it was reasonably foreseeable that plaintiff, in an effort to navigate the hazardous crowded platform condition created by defendants, would become distracted and not pay attention to whether water had accumulated on the platform.

¶ 42     Although plaintiff concedes that this case, which involves a recreational boat anchored offshore, is controlled by federal maritime law, plaintiff attempts to support her distraction exception argument by citing Illinois cases involving the duty of a landowner to an entrant with respect to conditions on land. Plaintiff fails to cite, and this court's research has not uncovered, any federal maritime law case that has applied the distraction exception found in cases analyzing premises liability law. However, even assuming, *arguendo*, that Illinois premises liability law is relevant to the analysis in the instant case, plaintiff's distraction exception argument fails under the particular facts of this case.

¶ 43     The Restatement (Second) of Torts, section 343A, at 218 (1965) provides, in pertinent part, that a "possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Generally, the owner or occupier may reasonably assume that invitees will exercise reasonable care for their own safety, and that ordinarily he need not take precautions against dangers which are known to the visitor or

so obvious that the visitor may be expected to discover them. Restatement (Second) of Torts § 343A, comment *e*, at 219 (1965). However, reason to expect harm to visitors from known or obvious dangers may arise "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Restatement (Second) of Torts § 343A, comment *f*, at 220 (1965).

¶ 44    The "distraction exception will only apply where evidence exists from which a court can infer that plaintiff was actually distracted." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 22 (distraction exception did not apply where the plaintiff tripped over an open and obvious sidewalk defect while her attention was fixed ahead on the door and steps of the clinic she intended to enter); see also, *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 452-53 (1996) (distraction exception did not apply where the record did not indicate the plaintiffs where distracted or forgetful of Lake Michigan's existence when they decided to dive off a concrete seawall in an area where the defendant had placed large quantities of sand that altered the depth of the water). Our supreme court has declined to conclude that "simply looking elsewhere constitutes a legal distraction, [because] then the open and obvious rule would be upended and the distraction exception would swallow the rule." *Bruns*, 2014 IL 116998, ¶ 34. The distraction exception to the open and obvious rule does not apply under the facts of this case because plaintiff concedes that, as she was walking on the swim platform, she was looking at the crowd of people assembled on the swim platform, the very hazard she complains defendants had created by offering to give guests rides on the tender. Moreover, nothing in the record indicates plaintiff was forgetful of the fact that she was on a boat anchored offshore when she decided to join the group of people waiting on the swim platform for a ride on the tender.

¶ 45    Plaintiff cites *Ward v. Kmart Corp.*, 136 Ill. 2d 132, 156-57 (1990), where the court reversed the grant of a judgment for the defendant department store notwithstanding the jury verdict that had been rendered in favor of the plaintiff customer. The court found there was ample evidence presented at the trial to support a finding that the defendant's duty of care encompassed the risk that a customer, distracted while carrying a large, bulky mirror purchased from the store, would collide with a concrete post located immediately outside the store entrance even though the customer previously had noticed the concrete post when he entered the store. *Id*. The court noted it was relevant that customers could not use another, large overhead door because it was closed, and there were no windows or transparent panels on the customer entrance doors to enable customers to view the concrete posts from the interior of the store. *Id*. at 154. The court acknowledged that the post was not inherently dangerous or hidden, but stated the proper inquiry was whether, under the particular facts of the case, the defendant should reasonably have anticipated injury to those entrants on his premises who were generally exercising reasonable care for their own safety, but who may reasonably have been expected to be distracted, as when carrying large bundles, or forgetful of the condition after having momentarily encountered it. *Id*. at 152. *Ward*, however, is distinguishable from the instant case. Here, plaintiff was not distracted by carrying any large, bulky object as she walked on the swim platform, and her testimony established that she saw the group of people on the swim platform as she walked around and among them. Nothing blocked plaintiff's view of the group of people on the swim platform, and under the facts of this case it was obvious that the condition of the swim platform could have been wet because it was being used for water activities.

¶ 46    There is no genuine issue of fact that could support a trial on plaintiff's negligence claim. Therefore, summary judgment was appropriate. We affirm the judgment of the circuit court

granting summary judgment in favor of defendants.

¶ 47    Affirmed.

¶ 48    JUSTICE PALMER, specially concurring.

¶ 49    I concur in the result reached herein by the majority. I write separately, however, to clarify our treatment of the distraction exception. As it was made clear in the plaintiff's reply brief as well as at oral argument, plaintiff contends that the crowd of people was the *distraction* and that the water on the swim platform was the *hazard*. The argument, then, is that while looking at the crowd of people, the distraction, the plaintiff could not discover, or will forget about, the existence of the water, the hazard. That being clarified, there is no evidence, nor could there be, that the existence of that crowd of people caused the plaintiff to forget that she was stepping onto a platform that was sitting in the midst of a large body of water, Lake Michigan.

¶ 50    JUSTICE GORDON, dissenting.

¶ 51    As I explain below, there are genuine issues of material fact which preclude the entry of summary judgment, and I must respectfully dissent.

¶ 52    In the case at bar, defendant testified at his deposition, in effect, that there was no danger and, hence, no open and obvious danger for plaintiff to perceive.   Defendant testified that the platform at issue had a surface that was skid-proof, that it had cut-outs which caused any water to drain from the platform, and that no one had slipped on one of his boats in his 40 years of boating. Thus, according to his own testimony, there was no danger for plaintiff to perceive.

¶ 53    "[S]ummary judgment is a drastic measure [that] should only be allowed 'when the right of the moving party is clear and free from doubt.' " *Mydlach v. DaimlerChrysler Corp.*, 226 Ill. 2d 307, 311 (2007) (quoting *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)).   A plaintiff is not required to prove his or her case at the summary judgment stage.   *Duffy v. Togher*, 382 Ill. App. 3d 1, 7

(2008). A trial court may grant summary judgment only where the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact. *Duffy*, 382 Ill. App. 3d at 7 (citing *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 370 (2007)); 735 ILCS 5/2-1005(c) (West 2014).

¶ 54   On a motion for summary judgment, the trial court has a duty to construe the record strictly against the movant and liberally in favor of the nonmoving party. *Duffy*, 382 Ill. App. 3d at 7 (citing *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 423-24 (1998)). As a result, summary judgment is not appropriate: (1) if there is a dispute as to a material fact; (2) if reasonable persons could draw divergent inferences from undisputed material facts; or (3) if reasonable persons could differ on the weight to be given the relevant factors of a legal standard. *Duffy*, 382 Ill. App. 3d at 7.

¶ 55   In the case at bar, there is a question about whether a reasonable person could draw divergent inferences from undisputed facts, such as whether plaintiff should have perceived a danger in light of the no-skid surface, the water-drainage holes, the lack of accidents by others and plaintiff's testimony that she observed no water on the platform filled with people.

¶ 56   The question of whether a particular landowner owed a duty of care to a particular invitee under a theory of premises liability is a question of law. *Duffy*, 382 Ill. App. 3d at 7 (citing *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 388 (1989)). When a condition is found to be open and obvious, generally there is no duty of care to the invitee. *Duffy*, 382 Ill. App. 3d at 8 (there is a firmly rooted " 'principle of Illinois law which holds that persons who own, occupy or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious' " (quoting *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 423 (1998))). However, when a court cannot conclude as a matter of law that a

condition posed an open and obvious danger, then the obviousness of the danger is for the jury to determine. *Duffy*, 382 Ill. App. 3d at 7 (citing and quoting numerous cases).

¶ 57 In addition, "[t]he existence of an open and obvious danger is not a *per se* bar to finding that a defendant who owns, occupies or controls land has a duty to exercise reasonable care." *Jackson*, 185 Ill. 2d at 425; *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 449 (1996) (not "an automatic or *per se* bar"). Other relevant factors include: (1) the likelihood of injury; (2) the reasonable foreseeability of such injury; (3) the magnitude of the burden of guarding against such injury; and (4) the consequences of placing that burden on the defendant. *Duffy*, 382 Ill. App. 3d at 7 (citing *Jackson*, 185 Ill. 2d at 425, and *Bucheleres*, 171 Ill. 2d at 456). Once a court finds that a danger is open and obvious, the court's analysis is not complete until it has analyzed these four traditional factors. *Duffy*, 382 Ill. App. 3d at 7 (citing *Jackson*, 185 Ill. 2d at 425, and *Bucheleres*, 171 Ill. 2d at 456.

¶ 58 In the case at bar, the likelihood and reasonable foreseeability of an injury to an inexperienced boater, who lacked the 40 years' experience of defendant, was high; the burden of guarding against the injury, namely, by not inviting inexperienced boaters, was low; and the consequences of placing that burden on defendant make sense, given his superior experience and knowledge of boats as compared to plaintiff's relative lack of experience and knowledge.

¶ 59 For the foregoing reasons, I believe that there are genuine issues of material fact which preclude the entry of summary judgment, and I must respectfully dissent.