[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14819
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-22810-RNS

JANET KRUG,

Plaintiff-Appellant,

versus

CELEBRITY CRUISES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 14, 2018)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

In this maritime tort action, Plaintiff Janet Krug appeals the district court's grant of summary judgment to Defendant Celebrity Cruises. Plaintiff sued Defendant following serious injuries she sustained while playing a music trivia game aboard one of Defendant's cruise ships. After careful review, we affirm the district court's grant of summary judgment in favor of Defendant.

## I.    BACKGROUND

### A.    Facts

In January 2016, Plaintiff and her husband were passengers on Defendant's *Infinity* cruise ship. At the time of the cruise, Plaintiff was 61 years old and had suffered from back pain for nearly 20 years. She takes hydrocodone for the pain and has undergone four back surgeries, including the implantation of a spinal cord stimulator. She cannot walk more than two blocks, stand longer than 15 minutes, run, jump, or carry anything of significant weight. Because of the pain, she stopped working in 2015 and began receiving full disability.

On the final full day of the cruise, January 16, 2016, Plaintiff took one hydrocodone pill in the morning and one in the afternoon. While having an early lunch, she had one or two cocktails and a couple sips of a glass of wine. After lunch, Plaintiff and her husband participated in a music trivia game called "Name that Tune" in the Constellation Lounge. They had played the game twice before in the same location—a large room that had a dance floor and a raised stage. Plaintiff

2

had previously walked across the dance floor and never had any difficulty or noticed it to be in disrepair.

To play the game, contestants chose teams and the host passed out slips of paper for the contestants to write the name of the song played by the host.  On the day of the incident, there was a tie among several teams.  As a result of the tie, the host asked a member from each team to line up at the end of the dance floor.  He explained that he would put a microphone on the edge of the stage and then play a song.  He told contestants that when they knew the name of the song, they should run up to the stage, grab the microphone, and shout the name of the song.

As the representative from her team, Plaintiff lined up on the dance floor with the other contestants.  When the host started playing the song, Plaintiff recognized it as her wedding song.  She remembered thinking, "I need to win this," so she ran or quickly stepped across the dance floor toward the stage.  The next thing she remembered was lying face down on the floor.  She did not know what caused her to fall, nor did she remember slipping, tripping, or colliding with anyone.  As a result of the fall, she hit her head on the stage.  Plaintiff suffered serious injuries and had to be air-lifted off of the ship to undergo surgery.

### B.    Procedural History

Plaintiff subsequently sued Defendant, asserting one count of negligence and one count of vicarious liability.  Specifically, she alleged that Defendant was

3

negligent for creating an unreasonably dangerous condition and failing to warn passengers about it.  The parties filed cross motions for summary judgment.[1]  The district court denied Plaintiff's motion and granted Defendant's motion.

In granting Defendant's motion for summary judgment, the district court first concluded that Defendant had no duty to warn Plaintiff of any alleged danger in playing the tiebreaker game because it was open and obvious.  The court then concluded, however, that even if the risks inherent in the tiebreaker game were not apparent, Plaintiff had failed to present any evidence showing that Defendant had actual or constructive notice of the allegedly dangerous condition.  Moreover, Plaintiff failed to establish that Plaintiff's operation of the game violated industry standards.  Finally, the court declined to rule on Defendant's motion to strike the opinions of Plaintiff's experts because the experts merely speculated about what could have caused Plaintiff to fall and therefore their opinions were insufficient to withstand summary judgment, in any event.  Plaintiff now appeals that order.

## II.    DISCUSSION

### A.    Standard of Review

We review the district court's grant of summary judgment *de novo*, utilizing the same legal standards as the district court.  *Royal Ins. Co. of Amer. v. Whitaker*

---

[1]  Defendant also moved to strike the opinions of Plaintiff's experts, David Pecoraro and Jeffrey Perlstein.

4

*Contracting Corp.*, 242 F.3d 1035, 1040 (11th Cir. 2001). "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving part is entitled to judgment as a matter of law." *Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014). To make this determination, we view all facts and resolve all doubts in favor of the nonmoving party. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). We may affirm an order granting summary judgment based on any reason supported by the record. *Wright v. City of St. Petersburg, Fla.*, 833 F.3d 1291, 1294 (11th Cir. 2016).

### B.    Applicable Law

This action is governed by federal maritime law because Plaintiff's injury occurred on a ship sailing in navigable waters. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). "It is a settled principle of maritime law that a shipowner owes a duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 908 (11th Cir. 2004) (alteration omitted) (quotation marks omitted). However, "[a] carrier by sea [] is not liable to passengers as an insurer, [] only for its negligence." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984). To prevail on a negligence claim under federal maritime law, a plaintiff must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach

actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

## C.    Analysis

Plaintiff argues that the district court erred by granting summary judgment in favor of Defendant because Defendant's operation of the tiebreaker game was negligent. Specifically, Plaintiff argues that: (1) the dangers associated with the tiebreaker game were not open and obvious; (2) Defendant had actual or constructive notice of the risk-creating condition; and (3) the operation of the game violated industry standards. We discuss each argument in turn.

### 1.    Open and Obvious

Plaintiff alleges that Defendant had a duty to warn her of the latent dangers associated with the tiebreaker game because they were not open and obvious. Under federal admiralty law, a cruise ship has no duty to warn of known dangers that are open and obvious. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989); *see also Chaparro*, 693 F.3d at 1336 (explaining that "a cruise line owes its passengers a duty to warn of known dangers"). An open and obvious condition is one that should be obvious by the ordinary use of one's senses. *See Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345–46 (S.D. Fla. 2015); *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015) (noting that open and obvious conditions are "discernable through common sense

6

and the ordinary use of eyesight"). We evaluate whether a danger would be open and obvious from an objectively reasonable person's point of view and do not focus on the plaintiff's subjective perspective. *Lugo*, 154 F. Supp. 3d at 1345–46.

Here, Defendant did not breach any duty to warn Plaintiff because there were no hidden dangers in playing the tiebreaker game. According to Plaintiff, Defendant had a duty to warn about the latent danger of accelerating and decelerating in a small space on the ship. This alleged risk-creating condition, however, was open and obvious to Plaintiff. In her deposition, Plaintiff stated that the game show host explained the rules of the tiebreaker game before it began. She also stated that she had previously walked across the dance floor without any issues, and she and the other contestants stood in a row facing the stage. Further, the CCTV footage of the incident showed that nothing obstructed Plaintiff's view of the stage. Any alleged danger posed by rushing the stage with other people in order to win a game would have been apparent to a reasonably prudent person through the exercise of common sense and the ordinary use of that person's eyesight. *Cf. Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 474 (7th Cir. 1991) ("The general possibility of injury to participants who compete in an obstacle course under time pressure was certainly apparent."). In short, Defendant did not breach its duty of reasonable care by failing to warn Plaintiff of a condition of which she, or a reasonable person in her position, would be aware.

7

2.    Notice

Plaintiff also argues that the district court erred by concluding that Defendant did not have actual or constructive notice of the risk-creating condition. Even assuming that the danger was not open and obvious, a cruise ship has no duty to warn of a risk commonly encountered on land unless it has actual or constructive notice. *Keefe*, 867 F.2d at 1322. A plaintiff may establish notice by pointing to previous injuries or showing that the defendant had previously issued a warning about the condition. *See Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015).

Plaintiff presented no evidence that Defendant had actual or constructive notice of the allegedly dangerous condition. She argues that Defendant had notice of the allegedly dangerous condition because the cruise ship had used the same tiebreaker in the past. She points to the declaration of the game show host, Richard Alphonso, who attested that he had observed and personally used the same tiebreaker in other activities aboard various cruise ships.

Alphonso's declaration, however, establishes only that Defendant had used the tiebreaker before, not that it had notice of any of the alleged dangers associated with the game. Indeed, Plaintiff presented no evidence that anyone else had ever fallen or suffered injuries from participating in the same competitive tiebreaker. *See Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (indicating

that evidence of similar accidents may be relevant to a defendant's notice about a defective condition); *Smolnikar v. Royal Carribean Crusies Ltd.*, 787 F. Supp. 2d 1308, 1323–24 (S.D. Fla. 2011) (concluding that a cruise ship did not have actual or constructive notice of any risk-creating condition because there was no evidence of accident reports or passenger comments or reviews indicating any potential safety concerns). Defendant's lack of notice is further bolstered by Alphonso's statement that he was not aware that this tiebreaker game posed any danger until the present incident occurred.

Plaintiff asserts that Alphonso's statement prior to the start of the tiebreaker game that "safety is always first" raises an issue of fact as to whether Defendant had notice of the allegedly dangerous condition.[2] We disagree. In *Sorrels*, we determined that evidence that a cruise ship posted signs after rain to warn passengers that the deck may be wet created an issue of fact as to whether the cruise ship had knowledge that the deck could be slippery and dangerous when wet. *See Sorrels*, 796 F.3d at 1288–89. However, there was evidence in that case indicating that the cruise ship knew the deck became slippery when wet and had therefore provided a warning for that specific purpose. *See id.* In the present case, there is no evidence indicating that the general safety instruction given by

---

[2] In the Security Incident Statement that Alphonso filled out on the same day as the accident, he stated that he told the contestants prior to the start of the game to "please keep in mind that safety is always first."

9

Alphonso was intended to warn passengers about the specific dangerous condition alleged by Plaintiff: the accelerating and decelerating in a small space on a ship. In short, Plaintiff has failed to cite any evidence establishing that Defendant had actual or constructive notice of the allegedly dangerous condition.

### 3.    Expert Testimony Regarding Industry Standards

Finally, it appears Plaintiff also attempts to establish the duty element through expert testimony purportedly showing that Defendant violated industry standards. Indeed, she asserts that the district court erred by disregarding the testimony of her maritime and stage event experts—Captain Jeffrey Perlstein and David Pecoraro, respectively—concerning how Defendant's operation of the tiebreaker game violated industry standards. The district court noted, however, that Plaintiff's experts failed to identify which industry standards Defendant violated through its operation of the tiebreaker game. Moreover, Captain Perlstein acknowledged that he was not aware of any standard prohibiting running on a ship, aside from the fact that it went against "best practices and common sense." Captain Perlstein also stated that most ships have a running track where people are supposed to run.

In short, contrary to Plaintiff's contention, the district court did not disregard the experts' opinions. Instead, the court considered the opinions and determined that neither opinion supported Plaintiff's argument that the tiebreaker game

violated industry standards.  But more importantly, the court determined that because neither expert opined about what actually caused Plaintiff to fall, the opinions were insufficient to avoid summary judgment.  We agree with the district court's determination.

## III.    CONCLUSION

For the above reasons, the judgment of the district court is **AFFIRMED.**